United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EDUARDO REYES, | No. C 08-0813 SI (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| RICHARD KIRKLAND, et al., | |
| Defendants. / | |

### INTRODUCTION

This is a federal civil rights action brought by a *pro se* state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants, officers and employees of Pelican Bay State Prison ("PBSP") (1) used excessive force against him in violation of the Eighth Amendment; (2) forced plaintiff to stay overnight in a concrete yard in frigid temperatures; and (3) forced him to reside in a cell contaminated with pepper spray, after having denied his requests to have the cell cleaned.

Defendants move for summary judgment on grounds that there are no triable issues of material fact and that all defendants are entitled to judgment as a matter of law as to all claims. For the reasons stated herein, defendants' motion for summary judgment is GRANTED in favor of all defendants as to all claims. Judgment will be entered in favor of all defendants, and

plaintiff shall take nothing by way of his complaint.

**STATEMENT OF FACTS**

It is undisputed that at 4:15pm on June 24, 2006, the B-yard, plaintiff's yard, at PBSP was put on lock-down, and that an emergency count was instituted because some inmates classified as "Southern Hispanics" had covered the openings of their cells with sheets and mattresses, thereby preventing officers from taking an inmate count. (Plaintiff is classified as a "Southern Hispanic.") (Am. Compl. at 3.) Defendants Peppiot, Slavec, Chapman, Miller, Richcreek, George and Love, all correctional officers, were ordered to remove any coverings or barricades. At first, none of the inmates complied with instructions to remove the coverings or to cuff up, though plaintiff states that he attempted to cuff up when ordered. Defendants were able to remove some of the coverings by pulling them through the handcuff ports, and resorted to using pepper spray to stop inmates who tried to re-cover their cells, and failed to comply with instructions. Defendants also used pepper spray when they were unable to remove the coverings through the handcuff ports, and inmates refused to comply with instructions to remove the coverings. After being handcuffed, the inmates were removed from their cells and taken to the exercise yard, in order to decontaminate the cells, and perform medical examinations of the inmates. At 8:45 pm that same day, defendants were ordered back to the unit because Southern Hispanic inmates had again covered and barricaded their cells, allegedly to disrupt the 9pm head-count. (Defs.' Mot. for Summ. J. ("MSJ") ¶¶ 6, 8–13.)

Defendants assert that plaintiff's cell, when visited during the 8:45 incident, was, like the others, covered. Plaintiff does not dispute this, as he asserts that he was not given time to comply with the officers' instructions to remove the covering. (Pl.'s Opp. to MSJ ("Opp.") at 17–18.) According to defendants, Miller repeatedly ordered the inmates to remove the coverings, and, after the inmates failed to comply, removed the coverings himself through the handcuff port. Because the inmates would not stop trying to recover their cell fronts, defendants Chapman and George discharged pepper stray for 1–2 seconds. As Reyes and Flores, plaintiff's cellmate, continued to try to cover up the door, defendant Richcreek threw an "OC" grenade in

2

their cell, which discharged. Inmates then complied with defendants' orders to allow themselves to be cuffed and removed to the exercise yard. Plaintiff was medically examined, but refused to make a statement about his injuries, and a medical provider found none. In all, defendants removed 81 Southern Hispanic inmates from their cells as a result of the 8:45 cell coverings. Defendants assert that the use of force was necessary because the inmates presented a "direct, immediate and serious threat to the safety and security" to staff and to the institution. (MSJ ¶¶ 14–20.)

Plaintiff disputes some of these facts. Plaintiff asserts that rather than simply responding to exigent circumstances, defendants "carried out a planned, premeditated use of force to commit multiple cell extraction[s]." (Pl.s' Opp. to Mot. for Summ. J. ("Opp."), Ex. E, Decl. Reyes at 1.) "When the COs came to my door, they opened the food port and immediately started spraying and simultaneously yelling, 'Stop trying to cover the window' and 'Cuff up[,]' simultaneously spraying me with pep[p]er spray." (Id.) Without waiting for plaintiff to comply to cuff up or remove the covering, they squirted O.C. spray and launched flash grenades into the cell. (Id.)

According to plaintiff, defendants then required plaintiff to strip down to his socks and boxer shorts and then took him handcuffed into the concrete yard. (The concrete yard apparently is a confined area with walls but not a roof.) Plaintiff was left in the concrete yard handcuffed behind his back, along with all "Southern Hispanic" inmates for more than 16 hours in frigid temperatures. He was not fed breakfast or lunch the next day, could not defecate or urinate, and was not given "basic hygienic necessities" while in the yard. (Opp. at 18–19.)

The parties do not dispute the following facts. At about 1:30 p.m. on June 25, 2006, plaintiff and other inmates were removed from the concrete yard and returned to their cells. When plaintiff reached his cell, his socks were removed, so that he was then clothed in only his boxer shorts. He was put back in his cell, but the cell had not been fully decontaminated; there was residual orange powder and liquid in the cell from the O.C. spraying. All personal and state property had been removed from the cell — including the mattress, linens, hygienic supplies, and eating utensils. At dinner time, plaintiff received his first meal of the day, but was not

1 provided any utensils with which to eat it. When he asked for eating utensils and if the cell was 2 going to be decontaminated, floor officer John Doe told him that he could eat with his hands and 3 that the cell would not be decontaminated. This state of affairs continued for five days, i.e., a 4 contaminated cell, no linen, no change of underwear, and no eating utensils. Plaintiff then was 5 transferred to administrative segregation, where he filed a grievance about the foregoing 6 treatment.

**STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The

4

nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

**DISCUSSION**

**I.   Excessive Force Claims**

As noted above, plaintiff alleges that defendants used excessive force in extracting him from his cell.

The correctly-stated standard for determining whether excessive force was used in violation of the Eighth Amendment "is whether the defendants applied force 'maliciously and sadistically for the very purpose of causing harm,' — that is any harm." *Robins v. Meecham*, 60 F.3d 1436, 1439–41 (9th Cir. 1995). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *LeMaire v. Maass*, 12 F.3d 1444, 1454 (9th Cir. 1993); *see also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation); *see, e.g., Watts v. McKinney*, 394 F.3d 710, 712 (9th Cir. 2005) (finding that kicking the genitals of a prisoner who was on the ground and in handcuffs during an interrogation was "near the top of the list" of acts taken with cruel and sadistic purpose to harm another); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (pepper-spraying fighting inmates a second time after hearing coughing and gagging from prior spray was not malicious and sadistic for purpose of causing harm, where initial shot of spray had been blocked by inmates' bodies).

In order to establish excessive force, the plaintiff needs to meet a threshold of evidence. Where evidence of excessive force is "woefully sparse," the plaintiff fails to raise a material

issue of fact regarding an excessive force claim. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1061 (9th Cir. 2002) (affirming summary judgment on excessive force claim where plaintiff swung her feet in the air while being led by officers who gripped her arms to prevent her from falling). Additionally, failure to deny allegations of non-cooperation that would justify increased force can support a grant of summary judgment against the plaintiff. *Arpin v. Santa Clara Valley Transportation Authority*, 261 F.3d 912, 922 (9th Cir. 2001).

In the instant matter, to determine whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, the Court will use the *Hudson* factors. The first factor — the need for the application of force and the amount of force used — weighs in favor of defendants. It is undisputed that there were two cell-covering incidents (4:15pm and 8:45pm) involving dozens of inmates, including plaintiff, the repeated resistance to orders, and the multiple attempts to re-cover cells fronts. These facts presented a need for the application of force, and the use of pepper spray and handcuffing to restore order. Plaintiff's assertion that he was not given time to comply is an indirect admission that his cell front was covered. Such an assertion is undercut by his admission that the officers had removed 12 inmates before reaching plaintiff, a removal process that involved loud and repeated warnings to remove cell coverings. (Opp., Mem. of P. & A. at 4.) Furthermore, his assertion that he was not given time to comply with instructions is undercut by his admission that the officers were yelling, "Stop trying to cover the window," an indication that plaintiff and his cellmate were not following instructions, but instead were trying to recover the cell front. While plaintiff may have tried to comply with the orders to cuff-up, he does not dispute the assertion that his cell was covered, that he did not uncover his cell, or that he attempted to re-cover his cell. This tense, threatening atmosphere, provided the need for force, and the amount of force appears to have been narrowed to fit the need. Specifically, defendants used pepper spray and handcuffing to remove the inmates, reasonable choices for imposing order. Also, there are no allegations of gratuitous violence, such as throwing persons to the floor or punches being throw. As to the second factor — the extent of any injury inflicted — plaintiff speaks little of any injuries, pain or discomfort, and none that have caused permanent or lasting

pain or damage.

As to the third factor, the undisputed facts support a conclusion that defendants perceived a reasonable threat. As noted above, it is undisputed that there were two cell-covering incidents and dozens of uncooperative inmates, who, because hidden, may have been planning an ambush or other violent acts. As to the fourth factor, the efforts, if any, made to temper the severity of a forceful response, the Court concludes that this weighs in favor of defendants. It is undisputed that inmates were repeatedly instructed to remove cell coverings and to cuff up, instructions that were ignored, and, in the instances where inmates tried to recover their cells, flouted.

On these undisputed facts, read in the light most favorable to the nonmoving party, the Court concludes plaintiff has not shown evidence that precludes summary judgment on his excessive force claims. Accordingly, defendants' motion for summary judgment on the excessive force claims is GRANTED.

## II.   Detention in Exercise Yard

As noted above, plaintiff contends that defendants violated his Eighth Amendment rights when they forced him to stay in the cold exercise yard from roughly 9pm on June 24 to 1:30pm on June 25, some fourteen hours. During this time, plaintiff was clad in only his underwear, and was not allowed to use the bathroom, and was denied food.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer, 511 U.S. at 832; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, Farmer, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. See Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. See id. at 732–733; see, e.g., Hearns v. Terhune, 413 F.3d 1036, 1041–42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions); Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir.) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."), amended, 75 F.3d 448 (9th Cir. 1995).

The requisite state of mind to establish an Eighth Amendment violation depends on the nature of the claim. In a case such as the instant one, the "malicious and sadistic" standard applies to officials' actions and state of mind until prisoners were secured in the yard, and "deliberate indifference" standard applies thereafter. See Johnson, 217 F.3d at 734. Neither negligence nor gross negligence will constitute deliberate indifference. See Farmer, 511 U.S. at 835–36 & n.4; see also Estelle, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id.

Reading the facts of the instant matter in the light most favorable to the nonmoving party, plaintiff has not shown evidence that precludes summary judgment. The undisputed facts show

that there were two cell-covering incidents, requiring forcible cell-extraction, the use of pepper spray and handcuffing, detention of the inmates in the yard, and after such detention, cleaning of the cells. Defendants removed and detained plaintiff, along with 80 other inmates, in order to defuse an emergency situation, perform an inmate head-count, examine the inmates for medical needs, search the dozens of cells, empty the cells of contaminated items, clean the cells, and return the inmates to their cells. Under the undisputed circumstances of this case, having to endure many hours in the cold, and without food, while inconvenient and painful, are not sufficiently serious to warrant relief under Farmer. See Johnson, 217 F.3d at 732–733. Plaintiff was returned to his cell, and given food, though it was delayed.

These undisputed facts also do not indicate that defendants possessed a sufficiently culpable state of mind. While the conditions were difficult and uncomfortable, they do not, under the exigent circumstances presented by the cell-coverings, indicate that defendants were aware of a risk and ignored it. Rather, the temporary detention of the inmates in the exercise yard was apparently reasonable under the emergency circumstances, especially considering the need for safety and to clean the cells in order to make them habitable.

Furthermore, plaintiff's allegations of denial of bathroom facilities are contradicted by his own assertions. Plaintiff admits that toilets and sinks were available, though they were dirty. Though plaintiff states that he was unable to use the toilets because he was cuffed, he does not assert that he asked for asked for assistance in using the toilets, and was refused.

Plaintiff having failed to show that there are triable issues of material fact, defendants' motion for summary judgment as to the yard detention claims is GRANTED.

### III. Contaminated Cells

As noted above, plaintiff asserts that the cells were inadequately cleaned causing him to suffer the effects of exposure to pepper spray residue, and he was deprived of bedding and personal items, as well as eating utensils. Plaintiff asserts that these conditions persisted for five days.

Reading the facts of the instant matter in the light most favorable to the nonmoving party, plaintiff has not shown evidence that precludes summary judgment. The undisputed facts show that the cells were imperfectly cleaned for five days, and that plaintiff was deprived of bedding and personal items for five days, and suffered some pain and discomfort because of the pepper spray residue. Such facts do not indicate that the deprivation was sufficiently serious or that defendants possessed the requisite state of mind for deliberate indifference. The fact that the cells were cleaned within a few days of the contamination, and that contaminated bedding was removed in order to prevent inmates from further exposure indicate that defendants were in fact aware of the conditions faced by the inmates and took steps to prevent injury and pain. The deprivation of eating utensils does not rise to the level of deliberate indifference. Plaintiffs were given food, however inconvenient it was to eat it. Accordingly, plaintiff having failed to show that there is a triable issues as to any material fact, defendants' motion for summary judgment as to his claims regarding the conditions of his cell is GRANTED.

## CONCLUSION

Plaintiff having failed to show that there are triable issues of material fact, defendants' motion for summary judgment (Docket No. 40) is GRANTED as to all claims against the following defendants: Yax, Chapman, George, C. Hamilton, Love, Miller, D. Nelson, Peppiot, Richcreek, and Slavec. Judgment will be entered in favor of these defendants. Plaintiff shall take nothing by way of his complaint.

The Clerk shall enter judgment in favor of defendants, terminate the pending motion, and close the file.

This order terminates Docket No. 40.

**IT IS SO ORDERED**.

DATED: August 27, 2010

SUSAN ILLSTON
United States District Judge